UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| CONSTANCE BELL, individually and on behalf of all others similarly situated,<br><br>                    Plaintiff,<br><br>          v.<br><br>ARCHCARE COMMUNITY SERVICES, INC., d/b/a ARCHCARE, and CARMEL RICHMOND NURSING HOME, INC.,<br><br>                    Defendants. | Case No.: 24-cv-01877<br><br>**COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Constance Bell ("Plaintiff" or "Bell"), on behalf of herself and all other similarly situated persons, by and through her undersigned counsel, alleges upon personal knowledge as to herself and upon information and belief as to other matters (which is based on, among other things, her experiences at Defendants' facility, review of Defendants' records, conversations with Defendants' employees and investigation of her counsel), as follows:

## NATURE OF ACTION

1.     Plaintiff brings this action on behalf of herself and all other similarly situated current and former hourly paid and non-exempt employees ("Hourly Employees") of ArchCare Community Services, Inc. ("ArchCare") and Carmel Richmond Nursing Home, Inc. ("Carmel Richmond") (collectively, "Defendants"), which, by virtue of their management and control over the wages and work of Plaintiff and the Hourly Employees, are classified as "employers" under applicable labor law.

2.     Defendants operate nursing homes and provide nursing care services throughout the State of New York.  Specifically, Defendants operate at least six nursing homes, including nursing homes in all five boroughs of New York and Westchester County.  Defendants employ

more than 1,000 current Hourly Employees, including, among others, nurses, and certified nursing assistants.

3.    As particularized below, Defendants have engaged in illegal and improper wage practices and policies that have deprived Hourly Employees of millions of dollars in wages and overtime compensation. These practices include: (a) improperly penalizing Hourly Employees by configuring the time clocks in Defendants' facilities to round down and artificially reduce the amount of time Hourly Employees are credited with performing work; and (b) automatically deducting time for meal breaks when Hourly Employees are performing work during that time. Furthermore, Defendants failed to provide Hourly Employees with appropriate and accurate pay rate acknowledgement forms and weekly wage statements. These illegal practices and policies are uniform throughout Defendants' facilities and have been known to Defendants for years.

4.    For these reasons, Plaintiff brings this action on behalf of herself and other Hourly Employees to recover unpaid wages, overtime compensation, damages, penalties and reasonable attorneys' fees and costs under the Fair Labor Standards Act (the "FLSA") §§ 201, *et seq.*, and under McKinney's Labor Law (the "NYLL"), §§ 190, *et seq.*, 195(1), 195(3), §§ 650, *et seq.*, and 12 NYCRR § 142-2.2.

## JURISDICTION AND VENUE

7.    This Court has original jurisdiction pursuant to 28 U.S.C. § 1331 because the action involves a federal statute, the FLSA, 29 U.S.C. § 216(b).

8.    This Court has original jurisdiction over all claims in this action under the Class Action Fairness Act, 28 U.S.C. § 1332(d). This is a proposed class action in which: (a) there are 100 or more members in the proposed class; (b) at least some members of the proposed class have

a different citizenship from the Defendants; and (c) the claims of the proposed class members exceed $5,000,000.00 in the aggregate.

9.     This Court has supplemental jurisdiction under 28 U.S.C. § 1367 over the NYLL state law wage and hour claims because those claims derive from a common nucleus of operative fact.

10.     Venue is proper in the Eastern District of New York pursuant to 28 U.S.C. § 1391(b)(1) because a substantial part of the events giving rise to the claims asserted herein occurred in this judicial district.

<b><u>THE PARTIES</u></b>

**<u>Plaintiff</u>**

11.     Plaintiff is currently a resident of Staten Island, New York and is a current employee of Defendants.  Plaintiff has been employed by Defendants since June 2016 as an Hourly Employee and is currently paid an hourly rate of $15.00 per hour.  Specifically, Plaintiff has been employed by Defendants as a Certified Nursing Assistant.

12.     Plaintiff's job duties as a Certified Nursing Assistant include, among other things, providing healthcare services to patients at Defendants' facilities such as administering medication, making beds, preparing patients for doctor appointments, and recording clinical tasks.

13.     During the entirety of her employment, Plaintiff has been scheduled to work at least 41.25 hours per week.  More specifically, throughout her employment, Plaintiff was scheduled to work from 6:00 a.m. until 2:15 p.m., 5 days per week.  Plaintiff's scheduled hours included an automatically deducted meal break of 30 minutes per day.  Thus, Plaintiff was scheduled to work 43.75 hours per week inclusive of her meal period.

14.     As further set forth herein, Plaintiff routinely worked before and/or after her scheduled shift and during her uncompensated meal break, but was not properly compensated for all hours worked, including overtime at the applicable rate of one and one-half times her regular hourly rate.

15.     As a Certified Nursing Assistant, Plaintiff could not exercise independent discretion, judgment or control over the daily and overall operation of the areas in which he worked.  Bell could not hire or fire other Hourly Employees.  Plaintiff also could not pick and choose a particular job assignment during any given day, but rather was assigned particular job assignments by his supervisors.  Despite this lack of independent discretion, throughout the entirety of her employment as a Certified Nursing Assistant, Plaintiff was not properly compensated for all hours worked.

16.     By way of example of Defendants' improper time rounding practices and policies, on most days throughout her employment, Plaintiff performed essential work after clocking in but before the start of her scheduled shift, for which she was not paid.  Specifically, Plaintiff routinely clocked into work 5 minutes prior to the start of her scheduled shift and immediately began performing her job related duties, but her time was rounded and she was compensated as if she began work at 6:00 a.m.

17.     Similarly, Plaintiff routinely performed essential work for Defendants after the end of her scheduled shift, but was not compensated for this time.  To wit, on numerous occasions throughout her employment, Plaintiff would clock out between 5 to 15 minutes after the end of her scheduled shift and would perform work during this post-shift interval. However, her time was rounded as if she clocked out at 2:15 p.m.

18.     As a result, on these days, Plaintiff worked but was not compensated for at least 10-30 minutes as a result of Defendants' improper time rounding procedures.

19.     Indeed, every single year of her employment, Bell performed work on-the-clock in excess of her scheduled hours, but was not paid for all hours worked. For example, and without limitation, Bell recalls having worked in excess of 41.25 hours on-the-clock in each of the following weeks for which she was not paid for all hours worked: February 6, 2022 to February 12, 2022; February 13, 2022 to February 19, 2022; March 6, 2022 to March 12, 2022; and March 13, 2022 to March 19, 2022. During these weeks, like all other weeks worked by Bell, she clocked in or out significantly earlier or later than her scheduled shift, but was not compensated for all hours actually worked. These are merely a few examples of the multitude of weeks in which Bell worked over 41.25 hours on-the-clock but was not paid for all hours worked, including overtime at the rate of one- and one-half her regular hourly rate.

20.     In addition to Defendants' improper time rounding practices, Defendants also improperly failed to compensate Plaintiff at the applicable overtime rate for hours worked in excess of 40 in a week.  By way of specific example, in the pay period from January 9, 2022 to January 22, 2022, Plaintiff worked at least 103 hours on-the-clock. Despite having worked in excess of 40 hours in a week during this pay period, Plaintiff was compensated based only on her regular hourly rate of $15.00 per hour, rather than the applicable overtime rate of one and one-half times her regular hourly rate.

21.     Other Hourly Employees were likewise required to track the hours they worked for Defendants, either through time clocks identical to those used by Bell or through hard copy sign-in sheets.  Just like Plaintiff, other Hourly Employees were not compensated for all hours worked as a result of Defendants' improper timekeeping practices and policies.

22.    Bell was engaged in essential and integral work on Defendants' behalf during these and all other pre- and post-shift schedule-based time rounding periods in which she was clocked in but not compensated.  Work performed during the pre- and post-shift schedule-based rounding periods include some or all the job duties referenced *supra*.  This pre- and post-shift work was significant, integral and indispensable to the performance of job-related duties, was not a *de minimis* task or request and was predominantly for the Defendants' benefit.  This pre shift work occurred five times per week for anywhere between 5-10 minutes per day or more.

23.    Moreover, Bell would routinely be interrupted during her uncompensated meals breaks and be required to perform work before the expiration of her full-30-minute meal break.  Work performed during interrupted and uncompensated meal breaks includes those duties described *supra*.

24.    By way of example, during the pay period from March 6, 2022 to March 19, 2022, Bell was credited with working 75.00 hours on-the-clock, inclusive of ten automatically deducted half-hour meal periods. However, during this week, as was common throughout her employment, Bell's uncompensated meal break was interrupted by approximately 5-10 minutes each day. During such time, Plaintiff was performing work on Defendants' behalf.  Defendants, however, improperly deducted the entirety of Plaintiff's meal break from her compensation, despite knowing that Plaintiff performed work during her meal break.   As a result, during these weeks, just like many others, Bell worked additional hours, including hours in excess of 40 hours in a week, but was not paid any additional straight or overtime for these additional hours of work.

25.    Additionally, Bell's supervisor knew she was performing work during periods of improper pre- and post-shift time rounding and during uncompensated meal breaks but did nothing

to rectify the situation or compensate Bell for her time.  Specifically, Bell's supervisor with knowledge of Bell's uncompensated work include Sabrina [last name unknown].

26.    Thus, because of Defendants' improper time-rounding, meal break, and overtime compensation policies, and as described more fully below, Plaintiff was deprived of wages as required by the FLSA and NYLL, including at least 1-3 hours of uncompensated straight and/or overtime per week.

27.    Finally, Defendants never provided Plaintiff with proper pay rate acknowledgment forms at the commencement of her employment as required under NYLL §195(1), nor was she provided with appropriate weekly wage statements as required by NYLL §195(3).  Specifically, because Defendants failed to compensate Plaintiff for all hours worked, the pay statements provided to Plaintiff were inaccurate and incomplete, including failing to provide the correct number of hours worked and the correct amount of pay owed.  The requirement that employers, including Defendants, provide Plaintiff with accurate wage notices and wage statements is meant to protect Plaintiff's and employees' interest in being paid what they are owed.  Plaintiff was harmed as a direct result of Defendants' failure to provide accurate weekly wage statements, including hindering Plaintiff's ability to determine whether she was being compensated for all hours worked.

**Defendants**

28.    ArchCare is a not-for-profit corporation that operates nursing homes across the State of New York, including in Staten Island, New York, Rhinebeck, New York, Manhattan, New York, and Bronx, New York. According to its website, ArchCare provides services for Nursing Homes, Home Care, Short-Term Rehab, Hospital for Children, Housing Programs, Huntington's Disease, Memory Care, End-of-Life Care, and Nursing Home Alternatives.

29.    Carmel Richmond is a not-for-profit corporation that serves as one of ArchCare's nursing home facilities in Staten Island, New York.  Plaintiff is employed by Defendants and works at the Carmel Richmond facility.

30.    Throughout the relevant time period, Defendants have employed over 1,000 current and former Hourly Employees.

31.    The compensation policies of Defendants are centrally and collectively dictated, controlled, and ratified.  As such, Defendants had the power to control wage policies and practices through their oversight of day-to-day operating procedures, control over Hourly Employee work schedules, ability to determine Hourly Employees' rate of pay, and ability to control record-keeping practices.  Thus, Defendants are the joint employers of Plaintiff and class members within the meaning of the FLSA and NYLL.

## **FACTUAL ALLEGATIONS**

### **Background**

32.    Defendants employ over 1,000 current Hourly Employees at ArchCare.

33.    Defendants hired Plaintiff and all other Hourly Employees and promised to pay hourly wages for their work.  Full-time Hourly Employees are paid hourly wages based upon their job description and tenure that range between minimum wage and approximately $50.00 per hour and have a standard workweek of 40 hours.

34.    Hourly Employees are required to record the hours they work for Defendants, either by utilizing a time clock or a sign-in sheet.  Defendants' pay policies and practices are the same across all departments and all facilities, and the time-keeping systems used within each department are the same as to all Hourly Employees within each department and are the same or substantially similar across all departments.

**Defendants' Time-Keeping System Is Configured To Improperly
Penalize Hourly Employees When They Have Clocked In Before
The Beginning Of Their Shift And/Or After The End Of Their Shift**

35.    Defendants have a policy and practice of unlawfully penalizing Hourly Employees who clock in and perform work before their shifts are scheduled to begin and perform work after the end of their scheduled shift before they clock out.  Specifically, Defendants' timekeeping system is configured to artificially reduce the amount of time Hourly Employees are credited with having worked by rounding their clock-in and clock-out time, even though they are performing job-related duties between when they have actually clocked in/out and when they are scheduled to work.

36.    The work performed by Hourly Employees during these periods are at the request of Chiefs, Managers, Supervisors, Directors, and other superiors who know that Hourly Employees are not be paid for this time, but nonetheless instruct Hourly Employees to begin or complete tasks within the unpaid rounding window.

37.    For example, if an Hourly Employee is scheduled to end his shift at 2:00 p.m., and she clocks out at 2:10 p.m., she is paid only until 2:00 p.m. even though she is performing work related duties during that uncompensated 10-minute interval.  Similarly, if an Hourly Employee is scheduled to start her shift at 6:00 a.m. and she clocks in at 5:50 a.m., she is paid starting at 6:00 a.m. even though she is performing work-related duties during that uncompensated 10-minute interval.  Consequently, if an Hourly Employee is scheduled to begin her shift at 6:00 a.m. and she clocks in at 6:04 a.m., she is not given the benefit of being compensated from 6:00 a.m., but rather she is paid from 6:04 a.m. forward.  Similarly, if an Hourly Employee is scheduled to end her shift at 2:00 p.m. and she clocks out at 1:55 p.m., she is not given the benefit of being compensated until 2:00 p.m. but rather he is paid only up until he clocks out at 1:55 p.m.

38.     Although they request and are aware of the work Hourly Employees perform during these penalty periods, Defendants have knowingly configured their time-keeping system to deny compensating Hourly Employees for some – if not all – of this unlawful rounding time spent on Defendants' behalf by systematically rounding down the total time worked by Hourly Employees.

39.     "Rounding" practices are permissible under the FLSA and NYLL if the "arrangement averages out so that the Hourly Employees are fully compensated for all the time they actually work." 29 C.F.R. § 785.48(b).  This practice is accepted provided that the time rounding is used in such a manner that will not, over a period of time, result in the failure to compensate Hourly Employees properly for all the time they have actually worked.  Defendants are aware of permissible rounding practices under the FLSA and NYLL.  However, despite their knowledge of permissible rounding practices and knowing that its time keeping software works only to the benefit of the Defendants and to the detriment of the Hourly Employees, Defendants have never conducted an analysis to determine whether Defendants' time clock system averages out – which it does not.  As such, Defendants' rounding practice unfairly favors Defendants versus the Hourly Employees subject to policy, which consistently and artificially reduces the total time Hourly Employees are credited with working at Defendants' facilities.

**Defendants Exercise Control Over Their Wage Policies and Practices**

40.     Defendants have the power to control their wage policies and practices through their oversight and management of day-to-day operating procedures, control over Hourly Employee work schedules, negotiation of employee collective bargaining agreements, ability to determine employees' rate of pay and ability to control Defendants' record and time keeping practices.  For example, Defendants have negotiated contracts with their vendors regarding purchases of facility-wide supplies and services.

41.     By virtue of their positions, roles and conduct as described above, Defendants are "employers" under the FLSA and NYLL.

**Defendants Failed To Provide Hourly Employees With Timely
And Appropriate Wage Statements and Pay Rate
Acknowledgement Forms As Required Under NYLL**

42.     Defendants failed to provide Plaintiff and all other Hourly Employees with accurate wage statements at the time of payment of wages, containing: the dates of work covered by that payment of wages; names of the employee; name of employer; address and phone number of employer; rate or rates of pay and basis thereof; whether paid by the hour, shift, day, week, salary, piece, commission or other; gross wages; deductions; allowances, if any, claimed as part of the minimum wage; net wages; the regular hourly rate or rates of pay; the overtime rate or rates of pay; the number of regular hours worked; and the number of overtime hours worked, as required by NYLL §195(3).  Specifically, the wage statements provided to Plaintiff were inaccurate and incomplete by failing to include, among other things, the correct number of hours worked by Plaintiff and the correct rates of pay for all hours worked by Plaintiff.  As a result, Plaintiff was prejudiced and harmed in her ability to ascertain whether she was, in fact, being paid for all hours worked, resulting in Plaintiff and Hourly Employees being undercompensated by Defendants for years.

43.     Defendants also failed to provide Plaintiff and all other Hourly Employees at the time of hiring and when they received a change in their hourly rate of pay, a statement in English and the Hourly Employees' primary language, containing: the rate or rates of pay and the basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission or other; allowances, if any, claimed as part of the minimum wage; the regular pay day designated by the employer; the name of the employer; any "doing business as" names used by the employer; the physical address

of the employers' main office or principal place of business, and a mailing address if different; and the telephone number of the employer, as required by NYLL § 195(1). As a result, Plaintiff was unable to ascertain whether she was, in fact, being compensated for all hours worked and at the correct rate of pay. The failure to provide Plaintiff and Hourly Employees with proper pay rate acknowledgement documentation contributed to Defendants' practice and policy of failing to compensate Plaintiff and Hourly Employees for all hours worked.

**Hourly Employees Routinely Work During Uncompensated Meal Breaks**

44.     In addition to improperly rounding Hourly Employees' time worked, and failing to provide proper pay rate acknowledgement forms and wage statements, Defendants also k automatically deduct at least 30 minutes each day from Hourly Employees' compensation for a meal break, despite knowing that Hourly Employees routinely work during all or portions of their uncompensated breaks.

45.     Defendants' practice of automatically deducting meal breaks from Hourly Employees' compensation is uniform throughout Defendants' facilities and departments and applies regardless of the Hourly Employee's job title, duties, or responsibilities.

46.     Accordingly, Plaintiff seeks certification of the following classes of Hourly Employees:

> All Hourly Employees who are or were employed by Defendants within the three years (FLSA Collective Class) or six years (New York Class) preceding the filing of this action and were improperly penalized by Defendants' time rounding system if they clocked in or out or signed in or out before and/or after the end of their scheduled shift, even though they performed work related duties during this uncompensated time window and who were: (a) not compensated for all work performed while clocked-in; and/or (b) were not compensated for all work performed during uncompensated and automatically deducted meal breaks; and/or (c) were not fully compensated for time worked over forty hours per

week at overtime rates; and/or (d) not provided proper notice under NYLL §§ 195(1) and (3).

## FAIR LABOR STANDARDS ACT COLLECTIVE ACTION ALLEGATIONS

47.     The preceding paragraphs are incorporated by reference as if fully set forth herein.

48.     Plaintiff brings this FLSA collective action on behalf of herself and all other persons similarly situated pursuant to 29 U.S.C. §§ 207 and 216(b), specifically, on behalf of the aforementioned FLSA Collective Class.

49.     Excluded from the FLSA Collective Class are Defendants, their legal representatives, officers, directors, assigns, and successors, or any individual who has or had a controlling interest in ArchCare or Carmel Richmond.  Also excluded are persons and entities who submit timely and otherwise proper requests for exclusion from the FLSA Collective Class.

50.     Plaintiff is unable to state the exact number of Hourly Employees within the Collective Class without discovery of Defendants' books and records but estimates that the FLSA Collective Class exceeds 1,000 individuals.

51.     Defendants improperly benefited from Plaintiff and the FLSA Collective Class members' uncompensated work during schedule-based and time rounding periods and uncompensated meal breaks.

52.     Defendants' unlawful conduct has been widespread, repeated, and consistent. Moreover, Defendants' conduct was willful and in bad faith and has caused significant damages to Plaintiff and the FLSA Collective Class.

53.     Defendants are liable under the FLSA for failing to properly compensate Plaintiff and the FLSA Collective Class, and, as such, notice should be sent to the FLSA Collective Class. There are numerous similarly situated, current and former Hourly Employees who have been denied wages in violation of the FLSA who would benefit from the issuance of a Court-supervised

notice of the present lawsuit and the opportunity to join in the action. Those similarly situated Hourly Employees are known to Defendants and are readily identifiable through Defendants' records.

## NEW YORK CLASS ACTION ALLEGATIONS

54. The preceding paragraphs are incorporated by reference as if fully set forth herein.

55. Plaintiff brings this action on her own behalf and as a class action pursuant to Article 9 of New York Civil Practice Law and Rules on behalf of the aforementioned New York Class.

56. Excluded from the New York Class are Defendants, their legal representatives, officers, directors, assigns, and successors, or any individual who has or had a controlling interest in ArchCare and Carmel Richmond. Also excluded are persons and entities who submit timely and otherwise proper requests for exclusion from the New York Class.

57. Defendants employ over 1,000 Hourly Employees, and they systematically fail and refuse to pay their Hourly Employees for all compensable hours worked. The members of the New York Class are so numerous that joinder of all members in one proceeding is impracticable.

58. Plaintiff's claims are typical of the claims of other New York Class members because Plaintiff is an Hourly Employee who has not been compensated for work performed at her employer's request as a result of Defendants' uniform timekeeping system and during uncompensated meal breaks.

59. Plaintiff and other New York Class members have sustained similar types of damages as a result of Defendants' failure to comply with the NYLL.

60.    Plaintiff and other New York Class members have been injured in that they have been uncompensated or under-compensated due to Defendants' common policies, practices, and patterns of conduct.

61.    Plaintiff will fairly and adequately protect the interests of the New York Class. Plaintiff has retained counsel competent and experienced in complex class action and wage and hour litigation.  There is no conflict between Plaintiff and the New York Class.

62.    Common questions of law and fact exist as to the New York Class that predominate over any questions solely affecting them individually and include, but are not limited to, the following:

a.    Whether Defendants failed and/or refused to pay Plaintiff and the New York Class for all of the compensable time that they worked for Defendants while clocked-in;

b.    Whether Defendants failed and/or refused to pay Plaintiff for time worked during uncompensated and automatically deducted meal breaks;

c.    Whether Defendants failed to keep true and accurate time records for all hours worked by their Hourly Employees as required by New York Labor Law §§ 190 *et seq.* and 650 *et seq.*;

d.    Whether Defendants failed to provide appropriate and accurate pay rate acknowledgement forms and weekly wage statements as required by New York Labor Law §§ 195(1) and 195(3);

e.    Whether Defendants correctly compensated members of the New York Class for hours worked in excess of forty per workweek;

f.    Whether Defendants correctly compensated members of the New York Class for all uncompensated straight time hours worked under forty per workweek;

g.      Whether Defendants failed to comply with the posting and notice requirements of the NYLL;

h.      Whether Defendants engaged in a pattern and/or practice in New York of forcing, coercing, and/or permitting Plaintiff and New York Class members to perform work for Defendants' benefit which was not compensated;

i.      Whether Defendants' policy of failing to pay workers was instituted willfully or with reckless disregard of the law; and

j.      The nature and extent of class-wide injury and the measure of damages for those injuries.

63.      Class action treatment is superior to any alternatives for the fair and efficient adjudication of the controversy alleged herein. Such treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently and without the duplication of effort and expense that numerous individual actions would entail. Individual class members' damages are inadequate to justify the costs of prosecuting their claims in any manner other than a class action. No difficulties are likely to be encountered in the management of this class action that would preclude its maintenance as a class action, and no superior alternative exists for the fair and efficient adjudication of this controversy. Members of the New York Class are readily identifiable from Defendants' own records.

64.      Prosecution of separate actions by individual members of the New York Class would create the risk of inconsistent or varying adjudications with respect to individual members of the New York Class that would establish incompatible standards of conduct for Defendants.

65.     Without a class action, Defendants will retain the benefit of their wrongdoing and will continue a course of action that will result in further damages to Plaintiff and the New York Class.

66.     Plaintiff intends to send notice to all members of the New York Class to the extent required by New York C.P.L.R. § 904.

## FIRST CAUSE OF ACTION
## VIOLATION OF THE FAIR LABOR STANDARDS ACT
### (On Behalf of Plaintiff and the FLSA Collective Class)

67.     The preceding paragraphs are incorporated by reference as if fully set forth herein.

68.     At all relevant times, Defendants have been, and continue to be, "employers" engaged in interstate commerce and/or in the production of goods for commerce, within the meaning of the FLSA, 29 U.S.C. § 203.

69.     At all relevant times, Defendants have employed and continue to employ, Hourly Employees, including Plaintiff and each of the members of the FLSA Collective Class.

70.     Plaintiff consents in writing to be a part of this action pursuant to FLSA, 29 U.S.C. § 216(b), and attached hereto as Exhibit 1 is a copy of Plaintiff's Opt-in form.  As this case proceeds, it is likely that other individuals will sign consent forms and join as Plaintiffs and opt-ins.

71.     The FLSA requires each covered employer such as Defendants to compensate all non-exempt Hourly Employees at a rate of not less than one and one-half times the regular rate of pay for work performed in excess of forty hours per workweek.  The FLSA also requires each covered employer to pay the minimum wage for all hours worked.

72.     Plaintiff and the members of the FLSA Collective Action were and are entitled to be paid minimum wage and overtime compensation for all hours worked.

73.     Defendants, pursuant to their policies and practices, failed and refused to pay minimum wage and overtime premiums to Plaintiff and the members of the FLSA Collective Class for all of their hours worked.

74.     By failing to compensate Plaintiff and the members of the FLSA Collective Class for minimum wage and overtime compensation, Defendants have violated, and continue to violate, the FLSA, 29 U.S.C. § 201, *et seq.*

75.     By improperly rounding FLSA Collective time entries, Defendants have violated, and continue to violate Department of Labor Regulation 29 C.F.R. § 785.48(b).

76.     The foregoing conduct, as alleged, constitutes a willful violation of the FLSA, within the meaning of 29 U.S.C. § 255(a).

77.     Plaintiff, on behalf of herself and members of the FLSA Collective Class, seek damages in the amount of their unpaid wages and overtime compensation, interest, and such other legal and equitable relief as the Court deems just and proper.

78.     Plaintiff, on behalf of herself and the FLSA Collective Class, seeks recovery of attorneys' fees and costs, to be paid by Defendants, as provided by the FLSA, 29 U.S.C. § 216(b).

**SECOND CAUSE OF ACTION**
**Violations of New York Labor Law – Nonpayment of Straight Wages**
**§§ 190 *et seq.* and 650 *et seq.* and 12 NYCRR 142-2.1 and 142-2.2**
**(On Behalf of Plaintiff and the New York Class)**

79.     The preceding paragraphs are incorporated by reference as if the same were fully set forth herein.

80.     Pursuant to New York Labor Law §§ 190, 191, 193, 198 and 652, Defendants have willfully failed to pay the straight wages due as set forth in the preceding paragraphs of this Complaint to Plaintiff and the New York Class in violation of New York Labor Law §§ 190, 191, 193, 198 and 652 and 12 N.Y.C.R.R. 142-2.1 and 142-2.2.

81.     Defendants were not and are not permitted by state or federal law, or by order of a court of competent jurisdiction, to withhold or divert any portion of the Plaintiff's and the New York Class wages that concern this lawsuit.

82.     Defendants were not authorized by Plaintiff or any New York Class members to withhold, divert or deduct any portion of their unpaid wages which are the subject of this lawsuit.

83.     Pursuant to New York Labor Law § 198, employers such as Defendants who intentionally fail to pay an Hourly Employee wages in conformance with New York Labor Law shall be liable to the Hourly Employee for the wages or expenses that were intentionally not paid, and court costs and attorneys' fees incurred in recovering the unpaid wages.

84.     Defendants have violated the New York Labor Law by failing to pay Plaintiff and the members of the New York Class for all compensable time and by failing to pay Plaintiff and the members of the New York Class for the straight time worked at the established rate.

85.     Plaintiff, on behalf of herself and the New York Class, seek the amount of underpayments based on Defendants' failure to pay straight wages of at least the minimum wage for all hours worked, as provided by the New York Labor Law, and such other legal and equitable relief as the Court deems just and proper.

86.     Plaintiff, on behalf of herself and the New York Class, seeks all liquidated damages and punitive damages and penalties available under the NYLL.

### THIRD CAUSE OF ACTION
### New York Labor Law – Unpaid Overtime
### (On Behalf of Plaintiff and the New York Class)

87.     The preceding paragraphs are incorporated by reference as if the same were fully set forth herein.

88.     The overtime wage provisions of Article 19 of the NYLL and its supporting regulations 12 N.Y.C.R.R. 142-2.1 and 142-2.2 apply to Defendants and protect Plaintiff and the members of the New York Class.

89.     Defendants have failed to pay Plaintiff and members of the New York Class overtime wages to which they are entitled under the NYLL and the supporting New York State Department of Labor Regulations.

90.     By Defendants' knowing and/or intentional failure to pay Plaintiff and the member of the New York Class overtime wages for hours worked in excess of forty hours per week, they have willfully violated NYLL Article 19, §§ 650 *et seq.*, and the supporting New York State Department of Labor Regulations.

91.     Due to Defendants' violations of the NYLL, Plaintiff and the members of the New York Class are entitled to recover from the Defendants their unpaid overtime wages, reasonable attorneys' fees and costs of the action, and pre-judgment and post-judgment interest.

92.     Plaintiff, on behalf of herself and the New York Class, seeks all liquidated and punitive damages and penalties available under the NYLL.

### FOURTH CAUSE OF ACTION
**New York Labor Law – Violation of the Notice and Recordkeeping Requirements
(On Behalf of Plaintiff and the New York Class)**

93.     The preceding paragraphs are incorporated by reference as if the same were fully set forth herein.

94.     Defendants have failed to provide Plaintiff and all Hourly Employees with a written notice, in English and in Spanish, containing: the rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; allowances, if any, claimed as part of the minimum wage, including tip, meal, or lodging allowances; the regular pay day

designated by the employer; the name of the employer; any "doing business as" names used by the employer; the physical address of the employer's main office or principal place of business, and a mailing address if different; and the telephone number of the employer, as required by NYLL §195(1).

95.    Defendants are liable to Plaintiff and each Hourly Employee in the amount of $5,000, together with costs and attorneys' fees.

## FIFTH CAUSE OF ACTION
### New York Labor Law – Violation of the Wage Statement Provisions
### (On Behalf of Plaintiff and the New York Class)

96.    The preceding paragraphs are incorporated by reference as if the same were fully set forth herein.

97.    Defendants have not provided Plaintiff and all Hourly Employees a statement with each payment of wages listing each of the following: the dates of work covered by that payment of wages; name of employee; name of employer; address and phone number of employer; rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; gross wages; deductions; allowances, if any, claimed as part of the minimum wage; net wages; the regular hourly rate or rates of pay; the overtime rate or rates of pay; the number of regular hours worked, and the number of overtime hours worked, as required by NYLL 195(3).

98.    Defendants are liable to Plaintiff and each Hourly Employee in the amount of $5,000, together with costs and attorney's fees.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff Constance Bell, individually and on behalf of the FLSA Collective, seeks the following relief:

A.      Designation of this action as a collective action on behalf of the FLSA Collective (asserting FLSA claims) and prompt issuance of notice pursuant to 29 U.S.C. §216(b) to all similarly situated members, apprising them of the pendency of this action, and permitting them to assert timely FLSA claims in this action by filing individual Plaintiff Consent Forms pursuant to 29 U.S.C. § 216(b);

B.      Designation of Plaintiff Constance Bell as the Representatives of the FLSA Collective Class;

C.      Appointment of Plaintiff's counsel as Lead Counsel for the FLSA Collective Class;

D.      An award of damages, according to proof, including but not limited to unpaid overtime wages and lost benefits, to be paid by Defendants;

E.      An award of costs incurred herein, including expert fees;

F.      An award of attorneys' fees pursuant to 29 U.S.C. § 216;

G.      An award of pre-judgment and post judgment interest, as provided by law;

H.      An award of injunctive relief to prevent against future wage and hour violations; and

I.      All such other relief as this Court shall deem just and proper.

**WHEREFORE**, Plaintiff Constance Bell, individually and on behalf of the New York Class, seeks the following relief:

A.      Certification of this action as a class action under Rule 23 and the appointment of Plaintiff's counsel as Lead Counsel for the New York Class;

B.      Designation of Plaintiff Constance Bell as the Representatives of the New York Class;

C.      On the Second Cause of Action (Violation of New York Labor Law – Nonpayment of Straight Wages):

1.  An award to Plaintiff and members of the New York Class of damages for the amount of unpaid straight wages in addition to interest subject to proof;

2.  An award to Plaintiff and the members of the New York Class of reasonable attorneys' fees and costs pursuant to New York Labor Law;

D.      On the Third Cause of Action (Violation of New York Labor Law – Unpaid Overtime):

1.  An award to Plaintiff and the members of the New York Class of damages for the amount of unpaid overtime, in addition to interest subject to proof; and

2.  An award to Plaintiff and the members of the New York Class of reasonable attorneys' fees and costs pursuant to New York Labor Law.

E.      On the Fourth and Fifth Causes of Action (Violation of New York Labor Law – Notice and Recordkeeping Requirements and Wage Statement Provisions):

1.  An award to Plaintiff and members of the New York Classes of damages for violation of the NYLL notice and recordkeeping provisions, pursuant to NYLL §§198(1-b), 198(1-d).

2.  An award to Plaintiff and the members of the New York Classes of reasonable attorneys' fees and costs pursuant to NYLL §§198(1-b), 198(1-d).

## <u>DEMAND FOR JURY TRIAL</u>

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands a trial by jury of all issues so triable.

## DEMAND TO PRESERVE EVIDENCE

Defendants are hereby directed to preserve all physical and electronic information pertaining in any way to Plaintiff and Plaintiff's employment, to Plaintiff's causes of action and/or prayers for relief, and to any defenses to same, including, but not limited to, electronic data storage, closed circuit TV footage, digital images, computer images, cache memory, searchable data, emails, spread sheets, employment files, memos, text messages, any and all online social or work related websites, entries on social networking sites (including, but not limited to, Facebook, Twitter, Instagram, WhatsApp, etc.), and any other information and/or data and/or things and/or documents which may be relevant to any claim or defense in this litigation.

## NOTICE PURSUANT TO NEW YORK BUSINESS CORPORATIONS LAW § 630

Defendants are hereby put on notice that pursuant to the provisions of Section 630 of the Business Corporation Law of New York, Plaintiff, the FLSA Collective Class, and the New York Class intends to charge and hold personally, jointly and severally liable, the ten largest shareholders of Defendants for all debts, wages, and/or salaries due and owing to Defendants' employees for services performed by them and Plaintiff has expressly authorized the undersigned, as her attorney, to make this demand on her behalf.

Dated: New York, New York
     March 13, 2024

                 McLAUGHLIN & STERN, LLP

                 By: _____
                      Brett R. Gallaway
                      Lee S. Shalov
                      Jason S. Giaimo
               260 Madison Avenue
               New York, NY 10016
               Telephone: (212) 448-1100

               *Attorneys for Plaintiff, the FLSA*
               *Collective Class and the New York Class*