UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

CONSTANCE BELL, *individually and on behalf of all others similarly situated*,

       *Plaintiff,*

   – against –

ARCHCARE COMMUNITY SERVICES, INC., *d/b/a ArchCare* and CARMEL RICHMOND NURSING HOME, INC.,

       *Defendants.*

**MEMORANDUM & ORDER**
24-cv-01877 (NCM) (CLP)

**NATASHA C. MERLE**, United States District Judge:

 Before the Court is defendants ArchCare Community Services, Inc. (d/b/a ArchCare) ("Archcare"), and Carmel Richmond Nursing Home, Inc.'s ("Carmel") motion to dismiss plaintiff's amended complaint pursuant to Federal Rule of Civil Procedure 12(b)(6).[1] For the reasons stated below, defendants' motion is **GRANTED in part, DENIED in part.**

## BACKGROUND

 Plaintiff Constance Bell was employed by defendants as a nurse aid trainee from about December 2021 to May 2022. Am. Compl. ("AC") ¶¶ 9–10, ECF No. 13. Defendants

---

[1] The Court hereinafter refers to the Memorandum of Law in Support of Defendants' Motion to Dismiss the Amended Complaint, ECF No. 25, as the "Motion"; Plaintiff's Memorandum of Law in Opposition to Motion to Dismiss, ECF No. 27, as the "Opposition"; and the Reply Memorandum of Law in Further Support of Defendants' Motion to Dismiss Plaintiff's Amended Complaint, ECF No. 28, as the "Reply."

operate nursing homes and provide nursing care services throughout the State of New York. AC ¶ 2. Defendants employ more than 1,000 hourly employees, including nurses, aids, and nurse aid trainees. AC ¶ 2. As a nurse aid trainee, plaintiff's job duties consisted of "providing healthcare services to patients at [d]efendants' facilities, including administering medication, making beds, preparing patients for doctor appointments, and recording clinical tasks." AC ¶ 10.

Defendants calculate their employees' pay via a timekeeping system. *See* AC ¶¶ 37, 45. There are two key features of defendants' system. First, the system "rounds to the nearest 15-minute increment," based on when an employee clocks in or out and when they are scheduled to work. AC ¶¶ 34, 37. For instance, if one of defendants' employees is scheduled to start their shift at 6:00 a.m., but clocks in and begins working at 5:50 a.m., the system rounds to the nearest 15-minute interval and the employee "is paid starting at 6:00 a.m." rather than at 5:50 a.m. AC ¶ 36. In the same vein, if an employee is scheduled to end their shift at 2:00 p.m., but continues working and clocks out at 2:10 p.m., she will be paid "only until 2:00 p.m." AC ¶ 36. Second, the system "automatically deduct[s] 30 minutes per shift from each . . . [h]ourly [e]mployees' pay for a meal break." AC ¶ 45. Defendants configured these automatic meal deductions in lieu of their employees "clock[ing] out during their meal breaks." AC ¶ 45.

Plaintiff was paid at a rate of $15.00 per hour. AC ¶ 9. Throughout her employment with defendants, plaintiff's regular shifts were scheduled from 6:00 a.m. until 2:00 p.m., including her uncompensated 30-minute meal break. *See* AC ¶ 11. However, plaintiff was required to "routinely work[] before and/or after her scheduled shifts and during her uncompensated meal breaks[.]" AC ¶ 13. Plaintiff's supervisors knew that she would work

before her scheduled shifts, after her scheduled shifts, and during her meal breaks, "but did nothing to rectify the situation or compensate Bell for her time." AC ¶ 25. Plaintiff was never compensated for these "additional hours," and she "never received any overtime pay during her employment with [d]efendants[.]" AC ¶¶ 20, 24.

Plaintiff's complaint provides an example of her work schedule. *See* AC ¶ 18. Specifically, plaintiff supplies the exact time she clocked in, and the exact time she clocked out, for all of her shifts for the pay period from March 6, 2022, to March 19, 2022. *See* AC ¶ 18. Plaintiff "clocked in before the start of her scheduled shift and/or after the end of her scheduled shift every single day during that two-week pay period, but was only compensated according to her scheduled hours[.]" AC ¶ 18. For example, on March 7, 2022, plaintiff clocked in at 5:55 a.m. and clocked out at 2:04 p.m. but was only compensated for those hours worked between 6:00 a.m. and 2:00 p.m., exclusive of her automatically deducted 30-minute meal break. *See* AC ¶ 18. Plaintiff alleges that during this two-week period she "worked at least 1 hour and 17 minutes on the clock for which she was not paid." AC ¶ 19. And during this same two week stretch, plaintiff's "uncompensated meal break was interrupted by approximately 5-10 minutes each day," by requests from her supervisors to work. AC ¶ 24. In total, from March 6, 2022, to March 19, 2022, plaintiff was credited with working 75 hours, "inclusive of 10 automatically deducted 30-minute meal periods." AC ¶ 24.

On March 13, 2024, plaintiff filed the instant putative collective action on behalf of herself and similarly situated "current and former hourly paid and non-exempt employees" of defendants. *See* Compl. ¶ 1, ECF No. 1. Plaintiff brought claims against defendants for overtime and minimum wage violations pursuant to the Fair Labor

Standards Act, 29 U.S.C. §§ 203, *et seq.*, ("FLSA"), and claims for unpaid overtime, nonpayment of straight wages, violation of notice and record keeping requirements, and violation of wage statement provisions pursuant to the New York Labor Law ("NYLL"). *See generally* Compl. Two months later plaintiff filed the amended complaint, dropping her claims for violations of notice and record keeping requirements and wage statement provisions, but otherwise retaining her FLSA and NYLL claims. *See generally* AC. Defendants moved to dismiss the amended complaint in its entirety for failure to state a claim pursuant to Rule 12(b)(6). *See* Mot. 6.

### LEGAL STANDARD

When deciding a motion to dismiss, a district court must "accept[] all factual claims in the complaint as true, and draw[] all reasonable inferences in the plaintiff's favor." *Lotes Co. v. Hon Hai Precision Indus. Co.*, 753 F.3d 395, 403 (2d Cir. 2014). Factual disputes are typically not the subject of the Court's analysis, as Rule 12 motions "probe the legal, not the factual, sufficiency of a complaint." *Plastic Surgery Grp., P.C. v. United Healthcare Ins. Co. of N.Y., Inc.*, 64 F. Supp. 3d 459, 468–69 (E.D.N.Y. 2014). That is, "the issue" on a motion to dismiss "is not whether a plaintiff will ultimately prevail" but instead whether a plaintiff is "entitled to offer evidence to support the claims." *Sikhs for Just. v. Nath*, 893 F. Supp. 2d 598, 615 (S.D.N.Y. 2012). Accordingly, dismissal is only appropriate if "it appears beyond doubt that the plaintiff can prove no set of facts which would entitle him or her to relief." *Sweet v. Sheahan*, 235 F.3d 80, 83 (2d Cir. 2000).

At the same time, plaintiff must allege sufficient facts to "nudge[] their claims across the line from conceivable to plausible." *Bell Atlantic Corp. v. Twombly*, 550 U.S.

4

544, 570 (2007). Conclusory allegations and legal conclusions masquerading as factual conclusions do not suffice to overcome a motion to dismiss. *Nwaokocha v. Sadowski*, 369 F. Supp. 2d 362, 366 (E.D.N.Y. 2005) (quoting *Smith v. Local 819 I.B.T. Pension Plan*, 291 F.3d 236, 240 (2d Cir. 2002)).

## DISCUSSION

### I.    FLSA Overtime Wage Claim

To state a claim for overtime wages, a plaintiff must plausibly allege: "(1) the employer was an enterprise engaged in commerce or in the production of goods for commerce; (2) the plaintiff is an employee within the meaning of the FLSA; and (3) that the plaintiff worked in excess of forty (40) hours in a given workweek and did not receive overtime compensation for such work." *Erdemir v. Allstate Marble & Granite, Kitchens and Baths Inc.*, 704 F. Supp. 3d 337, 357 (E.D.N.Y. 2023). Defendants' motion to dismiss focuses on the third element, specifically, whether plaintiff sufficiently alleges that she worked more than 40 hours in a given week. *See* Mot. 10.

Employees covered by the FLSA are entitled to be compensated at a rate of at least "one and one-half times the regular rate of pay for any hours worked in excess of forty per week." *See Nakahata v. N.Y.-Presbyterian Healthcare Sys., Inc.*, 723 F.3d 192, 200 (2d Cir. 2013) (citing 29 U.S.C. § 207(a)). To recover unpaid overtime, a plaintiff must allege that she was not paid overtime wages for compensable overtime hours. *See Zhang v. Great Sichuan on 3rd Ave. Inc.*, No. 15-cv-04558, 2024 WL 1159002, at *2 (S.D.N.Y. Feb. 2, 2024). A complaint must supply "sufficient factual matter to state a plausible claim that [a plaintiff] worked compensable overtime in a workweek longer than 40 hours." *Lundy v. Cath. Health Sys. of Long Island Inc.*, 711 F.3d 106, 114 (2d Cir. 2013). That is, a plaintiff

must "provide some degree of specificity in order to sufficiently plead an FLSA overtime claim." *Herrera v. Comme des Garcons, Ltd.*, 84 F.4th 110, 114 (2d Cir. 2023). However, an employee is not required "to provide a week-by-week recounting," nor must she "set forth the approximate number of unpaid regular and overtime hours," that she allegedly worked. *Herrera*, 84 F.4th at 114–15; *see also Dejesus v. HF Mgmt. Servs., LLC*, 726 F.3d 85, 90 (2d Cir. 2013) (explaining that "employees' memory and experience . . . lead them to claim . . . that they have been denied overtime in violation of the FLSA in the first place," and that the pleading standard "requires that plaintiffs draw on those resources in providing complaints with sufficiently developed factual allegations").

Plaintiff alleges that she "never received any overtime pay during her employment with [d]efendants, despite [the fact] that she routinely worked in excess of 40 hours in a week." AC ¶ 20. Plaintiff's alleged shifts during her employment with defendants began at 6:00 a.m. and ended at 2:00 p.m., including an "automatically deducted meal break of 30 minutes per day." AC ¶ 11. However, plaintiff alleges that she "routinely worked before and/or after her scheduled shifts and during her uncompensated meal breaks," and was "not properly compensated for all hours worked, including overtime[.]" AC ¶ 13. Indeed, plaintiff points to a two-week period in March 2022 as an example of defendants' routine underpayment. *See* AC ¶¶ 18–19, 24. Specifically, plaintiff alleges that during this period (i) she "clocked in before the start of her scheduled shift and/or after the end of her scheduled shift every single day," AC ¶ 18; (ii) her "uncompensated meal break was interrupted by approximately 5-10 minutes each day," in order to "perform[] work on [d]efendants' behalf," AC ¶ 24; and yet (iii) she was not paid any overtime, *see* AC ¶ 20.

6

Together, these allegations state a plausible claim that plaintiff worked compensable overtime and was not paid overtime wages.

Defendants argue that these allegations fail to support an overtime wage claim because they lack the requisite "specificity." *See* Mot. 11–12. Namely, defendants assert that plaintiff's complaint is deficient because she "never alleges that she was scheduled to work for forty (40) hours a week," given that her regular work schedule, "minus her daily 30-minute meal break, total[ed] 37.5 hours a week." Mot. 12. Defendants further contend that even "assuming [plaintiff] worked 10 minutes during each meal break," this would only amount to "an extra 50 minutes of work," per week, equaling a total of "38 hours and 20 minutes, which is not more than 40 hours." Mot. 13. Finally, defendants argue that "[e]ven if [plaintiff] worked through every single minute of her daily meal breaks, she does not and cannot exceed 40 hours worked." Mot. 13. Each of these arguments lack merit.

### A. Uncompensated Meal Break

To begin, a meal break counts towards the 40-hour weekly total unless an employee "enjoy[s] a daily bona fide meal period during which they are completely relieved from duty." *Herrera*, 84 F.4th at 116. If an employee is required to perform job duties during their meal break, "[s]he is not completely relieved from duty, and the meal period is compensable." *Shanfa Li v. Chinatown Take-Out Inc.*, 812 F. App'x 49, 52 (2d Cir. 2020). Employees are not required to "quantify how many minutes were spent during any given lunch break actually [performing job duties] in order to demonstrate that their lunch break was not a bona fide meal period." *Herrara*, 84 F.4th at 116 (quoting 29 C.F.R. § 785.19(a)). Instead, if a plaintiff "is required to be on-call to handle whatever work arises

7

during the meal break," they have sufficiently shown that they were not "completely relieved from duty" and thus did not enjoy a bona fide meal period. *Id.* at 116.

Plaintiff alleges that her 30-minute meal breaks "would routinely be interrupted," and that she was "required to perform work" before her meal breaks concluded throughout her tenure with defendants. AC ¶ 23. Plaintiff provides additional factual detail, including that her meal breaks were interrupted "by approximately 5–10 minutes," every day that she worked from March 6, 2022, to March 19, 2022. AC ¶ 24. These allegations are sufficient to support an inference that plaintiff was "required to be on-call during her lunch break and therefore was not completely relieved of duty." *Isayeva v. Diamond Braces*, No. 22-cv-04575, 2024 WL 1053349, at *7 (S.D.N.Y. Mar. 11, 2024); *see also Aguilar v. Calexico Cinco LLC*, No. 22-cv-06345, 2024 WL 3837669, at *5 (E.D.N.Y. June 28, 2024), *report and recommendation* (finding allegation that plaintiff "worked during his 30-minute lunch break every day" was "sufficient to conclude that this period did not qualify as a bona fide meal period"); *Mizzero v. Albany Med. Health Sys.*, No. 23-cv-00548, 2024 WL 2078628, at *6 (N.D.N.Y. May 9, 2024) (finding allegations of continuous and constant interruptions to unpaid lunch break "while somewhat lacking in specific detail, are nonetheless sufficient to satisfy the plausibility standard in that they sufficiently suggest that [the] [p]laintiff was required to remain on-call and perform work-related tasks during her lunch break and thus did not receive a bona fide meal break").

Because plaintiff plausibly alleges that she did not enjoy a bona fide meal period, her allegations support a reasonable inference that her regular weekly work schedule, consisting of shifts from 6:00 a.m. to 2:00 p.m., constituted 40 hours of compensable work. AC ¶¶ 11–12. Thus, defendants' argument that plaintiff's overtime claim must be

8

dismissed because her regular work schedule, "minus her daily 30-minute meal break, total[ed] 37.5 hours a week," Mot. 12, is of no moment. *See Aguilar*, 2024 WL 3837669, at *5 (determining allegations that the plaintiff's "regular scheduled work week was 37.5 hours per week," in addition to alleged "additional, uncompensated hours" supported a "plausible claim that he worked uncompensated overtime").

Defendants' argument that the only portion of plaintiff's meal breaks which count toward her weekly total hours is the 5–10 minutes she alleges were interrupted each break is misplaced. *See* Mot. 13. As previously explained, plaintiff is "not require[d] . . . to quantify how many minutes were spent during any given lunch break" actually working "to demonstrate that [her] lunch break was not a bona fide meal period." *Herrara*, 84 F.4th at 116. And because "[c]ourts have consistently held that on-call time can constitute compensable work under the FLSA,"—*i.e.*, when an employee does not enjoy a bona fide meal period—the *entire* thirty-minute period is compensable. *Redzepagic v. Hammer*, No. 14-cv-09808, 2017 WL 780809, at *7 (S.D.N.Y. Feb. 27, 2017); *see also Borja v. MSK Rest. Corp.*, No. 22-cv-06178, 2025 WL 951402, at *14 (E.D.N.Y. Mar. 13, 2025), *report and recommendation adopted*, 2025 WL 948122 (Mar. 29, 2025) ("If an employer grants time for meal breaks but interrupts or shortens them, that break time is therefore compensable as hours worked."); *Aguilar*, 2024 WL 3837669, at *4 (finding allegations that lunch break was disrupted every day by employer rendered the entire lunch break compensable time).

Contrary to defendants' assertion, that plaintiff does not "state why [she] was asked to do" work during her meal break or "what that work entailed," does not compel a different conclusion. Mot. 13. At the pleading stage, "[t]he specific tasks that [plaintiff]

was required to perform during her lunch hour . . . are immaterial." *Isayeva*, 2024 WL 1053349, at *8. To survive a motion to dismiss, "plaintiff must sufficiently allege 40 hours of work in a given workweek as well as some uncompensated time in excess of the 40 hours." *Lundy*, 711 F.3d at 114. Here, plaintiff alleges that throughout her employment— including the weeks of March 6, 2022 and March 13, 2022—she "was scheduled to work at least 40 hours per week," AC ¶ 11, inclusive of her consistently interrupted meal breaks, and that she "routinely worked before and/or after her scheduled shifts" without being compensated, AC ¶ 13. At the motion to dismiss stage, "[n]othing more is required."[2] *Herrera*, 84 F.4th at 115.

### B. Pre- and Post- Shift Work

Defendants argue that "[e]ven if [plaintiff] worked through every single minute of her daily meal breaks, she does not and cannot exceed 40 hours worked." Mot. 13. This is not so. During the precise pay period which plaintiff alleges that her lunch breaks were interrupted each day, the complaint further catalogues that plaintiff "clocked in before the start of her scheduled shift and/or after the end of her scheduled shift every single day." AC ¶ 18. Since plaintiff alleges she was only compensated from 6:00 a.m. to 2:00

---

[2]     For these reasons, defendants' reliance on *Lundy* is misplaced. *See* Mot. 11. As the Second Circuit has explained, the issue with the *Lundy* plaintiffs' allegations was that "they had not plausibly alleged having worked more than forty hours 'in a *given* workweek.'" *Herrera*, 84 F.4th at 114 (quoting *Lundy* 711 F.3d at 109, 114) (emphasis added). That is, they "alleged with insufficient specificity the weeks in which they were supposedly under-compensated." *Ramirez v. Liberty One Grp. LLC*, No. 22-cv-05892, 2023 WL 4541129, at *6 (S.D.N.Y. July 14, 2023). Here, by contrast, plaintiff alleges two specific weeks in which she was undercompensated, including the precise times she clocked in and clocked out. *See* AC ¶ 18; *see also Llivichuzhca v. Alphacraft Constr. Inc.*, No. 18-cv-01017, 2019 WL 13290820, at *3 (E.D.N.Y. Mar. 14, 2019) ("Defendants effectively ask this Court to ignore these specific allegations and focus instead on the occasions where [the] [p]laintiffs make reference to their typical and routine patterns of hours. The Court will not engage in such impermissible cherry-picking.").

p.m.—irrespective of whether she clocked in early or clocked out late for her shifts—over the course of those two weeks, she plausibly alleges that she worked more than forty hours and was not compensated. AC ¶ 19.

For their part, defendants argue that plaintiff fails to allege sufficient facts to support the inference that this alleged pre- and post-shift work was compensable. *See* Mot. 14–15. Defendants correctly note that "[n]ot all time spent on work related tasks before or after a shift is compensable." Mot. 15 (quoting *DeSilva v. N. Shore-Long Island Jewish Health Sys. Inc.*, 770 F. Supp. 2d 497, 510 (E.D.N.Y. 2011)). And in defendants' view, because the amended complaint fails to describe plaintiff's pre- and post- shift work, and because plaintiff "offers no explanation as to why [her] alleged preliminary and postliminary work took 3 minutes on some days, but 10 minutes on other days," she fails to plausibly demonstrate that this work was "integral" to the performance of her job duties, and therefore compensable. *See* Mot. 15–16.

While the complaint is not abundantly detailed on this score, plaintiff does allege some facts as to what her pre- and post-shift work entailed. Specifically, plaintiff alleges that the work performed during her "pre- and post-shift rounding periods include some or all of the job duties referenced *supra*," AC ¶ 22, referring to her duties articulated earlier in the amended complaint, such as "providing healthcare services to patients at [d]efendants' facilities, including administering medication, making beds, preparing patients for doctor appointments, and recording clinical tasks." AC ¶ 10. That these pre- and post- shift tasks allegedly included her core "job duties" suggests that the work was "integral and indispensable to performance of her job," and therefore compensable. *See Lundy*, 711 F.3d at 112.

11

Defendants' argument that plaintiff's claims are somehow less plausible simply because she did not spend the same amount of time on pre- and post-shift work each day is unsupported by authority, and in any event has no bearing on whether she, in fact, worked compensable overtime hours. Moreover, the fact that plaintiff "does not merely allege that she worked over forty hours per week . . . but additionally provides an estimate of her overtime hours . . . helps draw her claim closer to plausibility." *Brain v. Execu-Search Grp., LLC*, No. 22-cv-08219, 2024 WL 838085, at *4 (S.D.N.Y. Feb. 28, 2024) (quoting *Nakahata*, 723 F.3d at 201 n.10). Indeed, plaintiff specifically alleges that during a two week pay period in March 2022, she worked "1 hour and 17 minutes" worth of overtime "for which she was not paid." AC ¶ 19; *see also* Opp'n 15. While this may not be "a large overtime claim, it is an overtime claim nonetheless." *Aguilar*, 2024 WL 3837669, at *5.

In sum, plaintiff alleges sufficient facts to support an inference that she worked compensable overtime in a workweek longer than 40 hours, and therefore plausibly states an overtime wage claim pursuant to the FLSA. Accordingly, defendants' motion to dismiss this claim is denied.[3]

---

[3] Because plaintiff plausibly alleges that she was not paid overtime for hours worked in excess of forty per week, the Court does not reach the parties' arguments concerning whether defendants' alleged "rounding" practices violate the FLSA. *See Vilella v. Pup Culture LLC*, No. 23-cv-02291, 2023 WL 7986562, at *5 n.5 (S.D.N.Y. Nov. 17, 2023) ("The Court need not at this stage determine whether Plaintiff has put forward sufficient evidence to demonstrate a rounding violation or whether there was a common practice of improper rounding. Plaintiff has submitted sufficient evidence of a common practice of not paying employees overtime for hours worked in excess of forty a week.").

## II.    FLSA Minimum Wage Claim

Plaintiff also brings a minimum wage claim pursuant to the FLSA. AC ¶ 74. Notably, plaintiff's amended complaint does not appear to bring a minimum wage claim pursuant to the NYLL. *See* AC ¶¶ 80–93 (listing second and third causes of action for nonpayment of straight wages and unpaid overtime, respectively). To sufficiently allege a minimum wage violation pursuant to the FLSA, "an employee must plead facts demonstrating that her average hourly wage falls below the minimum wage." *Navarro v. Building Serv., Inc.*, No. 23-cv-07343, 2024 WL 4225747, at *2 (E.D.N.Y. Sept. 18, 2024). An employee's "average hourly wage" is calculated by dividing the "total remuneration for employment in any workweek by the total number of hours actually worked by h[er][.]" *Id.* (quoting 29 C.F.R. § 778.109). Because the parties dispute how many hours plaintiff actually worked, they also dispute her exact average hourly wage. *See* Mot. 19; Opp'n 23 n.8. However, for purposes of this motion, defendants argue that even if plaintiff "was uncompensated due to alleged mealtime interruptions for two and a half hours," her average hourly wage rate for a full 40-hour week would fall to $14.06—still above the federal minimum wage—and her claim must be dismissed. *See* Mot. 19. Therefore, plaintiff's claim turns on which minimum wage applies for purposes of determining liability under the FLSA: the federal minimum wage or the state minimum wage.

The FLSA protects workers by "guarantee[ing] covered employees a federal minimum wage." *Mei Xing Yu v. Hasaki Rest., Inc.*, 944 F.3d 395, 402 (2d Cir. 2019) (citing 29 U.S.C. § 206). In addition to supplying a guaranteed federal minimum wage, the FLSA also "expressly defers to state wage laws affording employees greater protection." *Gurung v. Halhotra*, 851 F. Supp. 2d 583, 592 (S.D.N.Y. 2012). Specifically,

the FLSA's "savings clause" provides that "[n]o provision of this chapter or of any order thereunder shall excuse noncompliance with any Federal or State law or municipal ordinance establishing a minimum wage higher than the minimum wage established under this chapter." 29 U.S.C. § 218(a) ("Section 218").

   The FLSA's federal minimum wage is $7.25 per hour. 29 U.S.C. § 206(a)(1)(C). The minimum wage in New York State between 2021 and 2022—the time of plaintiff's employment with defendants—was $15.00 per hour for employers with more than 11 employees. N.Y. Lab. Law § 652(1)(a)(i); *see also* AC ¶ 2 (defendants "employ more than 1,000 current [h]ourly [e]mployees"). Thus, plaintiff argues that she was "entitled to be paid at least $15.00 [per] hour for all time worked." Opp'n 23. Defendants disagree and contend that "when evaluating FLSA minimum wage claims, the focus is solely on whether the employee's hourly rate meets or exceeds the federal minimum wage." Reply 10.

   Courts in this circuit agree that, when calculating actual *damages*, plaintiffs will recover under the higher state minimum wage, even for a FLSA claim. *See Sanchez v. Ms. Wine Shop Inc.*, 643 F. Supp. 3d 355, 374 (E.D.N.Y. 2022) ("A plaintiff may recover liquidated damages for unpaid wages under either the FLSA or the NYLL, whichever provides for a greater recovery."); *see also Reyes-Fana v. Moca Grocery NY Corp.*, No. 21-cv-04493, 2022 WL 5428688, at *10 (E.D.N.Y. Aug. 16, 2022) *report and recommendation adopted*, 2022 WL 4094241 (Sept. 7, 2022) (calculating damages for FLSA and NYLL violations and explaining that "[a] plaintiff with a valid wage claim under both federal and state law may recover under whichever statute provides the greater damages").

The law in this circuit is less clear, however, as to whether FLSA *liability* alone for minimum wage claims can be based on a wage above the federal minimum wage but below the state minimum wage. While some courts have indicated that an "employer must pay the state minimum wage to satisfy the FLSA's minimum wage requirement[,]" they have done so in the context of default judgment and where a plaintiff sought to recover for unpaid minimum wages under both the FLSA and NYLL. *Cooper v. Fire & Ice Trucking, Corp.*, No. 23-cv-01675, 2024 WL 3344001, at *8 n.6 (E.D.N.Y. July 9, 2024); *see also Sevilla v. House of Salads One LLC*, No. 20-cv-06072, 2022 WL 954740, at *6 (E.D.N.Y. Mar. 30, 2022) (concluding on motion for default judgment that the defendant violated "the FLSA's and NYLL's minimum wage provisions," where defendant paid an average rate above the federal minimum wage, but below the city minimum wage).

Similarly, courts have stated that the FLSA requires employers to pay the state minimum wage if it is greater than the federal minimum wage in the context of inquests on damages following default judgment where plaintiffs brought minimum wage claims under both federal and state law. *See e.g.*, *Jesus v. Gotham Cleaners*, No. 23-cv-04783, 2024 WL 4264906, at *7 (S.D.N.Y. Aug. 1, 2024), *report and recommendation adopted*, 2024 WL 4264906 (Nov. 26, 2024) (noting in inquest on damages where the defaulting defendants failed to pay "minimum wage compensation required under the FLSA and NYLL," that the "FLSA requires employers to pay employees . . . the state minimum wage if it is greater," than the federal minimum wage); *Melgadejo v. S & D Fruits & Vegetables Inc.*, No. 12-cv-06852, 2015 WL 10353140 (S.D.N.Y. Oct. 23, 2015), *report and recommendation adopted*, 2016 WL 554843 (Feb. 9, 2016) (same).

On the other hand, in the context of assessing whether a plaintiff has stated a plausible FLSA minimum wage claim on a motion to dismiss, courts have concluded that the FLSA only requires employers to pay the federal minimum wage. *See e.g.*, *Jimenez v. W&M Servs. Inc.*, No. 22-cv-05061, 2025 WL 916921, at *3 (E.D.N.Y. Mar. 25, 2025) (rejecting argument that "the FLSA provides a federal cause of action for violations of state minimum wage laws, even if an employee is paid more than the federal minimum wage," on motion to dismiss and concluding that the FLSA only requires employers to pay the federal minimum wage); *Szabelski v. AM&G Waterproofing, LLC*, No. 22-cv-06590, 2024 WL 1259425, at *4 (E.D.N.Y. Mar. 25, 2024) (granting motion to dismiss because the plaintiff "d[id] not allege that [the] [d]efendants violated the minimum wage requirement under the FLSA because he allege[d] that he was paid at an hourly rate significantly higher than the federal minimum wage during the relevant time period."); *Rosa v. Dhillon*, No. 20-cv-03672, 2020 WL 7343071, at *3 (E.D.N.Y. Dec. 14, 2020) (granting motion to dismiss FLSA minimum wage claim and concluding that "for non-overtime wages, the FLSA requires only that employers pay the minimum wage rates set by *federal* law") (collecting cases).

The difference in these cases reflects the fact that while the FLSA's savings clause makes clear the statute "does not preempt any existing state law that establishes a higher minimum wage," it does not "incorporate state law[.]" *Jimenez*, 2025 WL 916921, at *3. That is, although the FLSA does not preempt state minimum wage laws, it also does not "create[] a federal cause of action to enforce state minimum wage laws." *Andrade v. A to Z Hardware, Inc.*, No. 22-cv-07304, 2024 WL 4029576, at *3 (E.D.N.Y. Aug. 17, 2024), *report and recommendation adopted*, 2024 WL 4028472 (Sept. 3, 2024); *see also Lundy*,

711 F.3d at 116 (noting that the FLSA "supplements the hourly employment arrangement with features that may not be guaranteed by state laws, without creating a federal remedy for all wage disputes"). As one court has explained:

> While the FLSA clearly provides that states and municipalities may enact laws providing for more generous minimum wages, and while the FLSA clearly provides that compliance with the FLSA minimum wage does not excuse noncompliance with a state or municipal minimum wage, there is no support for plaintiffs' argument that the failure to pay that more generous minimum wage states a FLSA minimum wage violation. Such failure may trigger a violation of the relevant state or municipal law, but it does not, by itself, support a federal minimum wage FLSA claim.

*McElmurry v. U.S. Bank Nat'l Ass'n*, No. 04-cv-00642, 2005 WL 2078334, at *4 (D. Or. Aug. 24, 2005).

Thus, while the FLSA does not prevent a plaintiff from recovering wages due under state minimum wage laws—and does not excuse noncompliance with such laws—the violation of a state minimum wage higher than the federal minimum wage does not, on its own, support a FLSA minimum wage claim. *See Jimenez*, 2025 WL 916921, at *3 ("FLSA requires only that employers pay the minimum wage rates set by *federal* law[,] [h]owever, to the extent that an employee establishes an FLSA violation, she may recover the greater of the federal or state minimum wage.").[4] Put differently, while the FLSA's

---

[4]    Each of plaintiffs' cited cases illustrates this point. *See Jesus*, 2024 WL 4264906, at *7 (noting in damages inquest where plaintiff alleged minimum wage violations under both the FLSA and NYLL that the FLSA required employers to "pay employees . . . the state minimum wage if it is greater"); *Villanueva v. 179 Third Ave. Rest Inc.*, 500 F. Supp. 3d 219, 234, 236 (applying state minimum wage in damages inquest where plaintiffs brought claims for violation of the FLSA and the NYLL's minimum wage provisions and noting that "[t]he federal minimum wage . . . does not preempt the state minimum wage, and a plaintiff may recover under whatever statute provides the highest measure of

savings clause ensures that the FLSA does not preempt state minimum wages, it does not expressly incorporate those amounts and turn them into violations of federal law. *See Lundy*, 711 F.3d at 115–16; *see also Fuk Lin Pau v. Jian Le Chen*, No. 14-cv-00841, 2015 WL 6386508, at *8 (D. Conn. Oct. 21, 2015) ("[C]onsider a[n] . . . employer who pays her employees $7.25 per hour. That employer has violated state law, but she has not violated federal law."). Accordingly, the Court finds that plaintiff's claim for unpaid minimum wages pursuant to the FLSA must be premised on the federal minimum wage and not the higher state minimum wage.

\*      \*      \*

Because plaintiff fails to allege facts indicating that her average hourly wage was less than the federal minimum wage, she has failed to state a plausible FLSA claim for minimum wage violations. Therefore, defendants' motion to dismiss this claim is granted.

## III.   NYLL Claims

Finally, plaintiff also brings claims for nonpayment of straight wages and unpaid overtime pursuant to the NYLL. *See* ¶¶ 80–93. Defendants' sole proffered basis for dismissal is that the Court should decline to exercise supplemental jurisdiction over these

---

damages."); *Melgadejo*, 2015 WL 10353140, at *9 ("Actual damages for minimum wage and overtime compensation owed will be calculated pursuant to the NYLL because during all relevant time periods the state minimum wage under the NYLL was greater than or equal to the federal minimum wage under the FLSA."); *Hinson v. Tammys Nail Utopia LLC*, No. 23-cv-02395, 2024 WL 3611409, at *14 (S.D.N.Y. July 31, 2024) ("Because plaintiffs who bring claims under both the FLSA and NYLL recover under the statute that provides the greater measure of damages, the Court applies the higher NYLL minimum wage."); *McLaughlin v. Onanafe Mgmt. Sols. LLC*, No. 22-cv-06792, 2024 WL 4184485, at *9 (E.D.N.Y. Sept. 14, 2024) (concluding that plaintiff was entitled to recover under the higher of local, state, or federal minimum wage where plaintiff brought claims for FLSA and NYLL minimum wage violations).

claims because plaintiff's "federal claims arising under the FLSA are lacking." Mot. 7 n.3. As discussed above, the Court concludes that plaintiff plausibly alleges a claim for unpaid overtime pursuant to the FLSA. *See generally* Part I. Accordingly, the Court may exercise supplemental jurisdiction over plaintiff's state law claims, and defendants' motion to dismiss these claims on this basis is denied. *See Aponte v. St. Pizza Inc.*, No. 22-cv-03188, 2023 WL 1795189, at *3 (S.D.N.Y. Feb. 7, 2023) ("Since [the] [p]laintiffs have sufficiently alleged a cause of action pursuant to FLSA, the Court may exercise supplemental jurisdiction over [the] [p]laintiffs' state NYLL claims.").

## CONCLUSION

For the reasons stated above, defendants' motion to dismiss is **GRANTED in part, DENIED in part.** Defendants shall file and serve an answer to the amended complaint on or before May 12, 2025. This case is referred to Magistrate Judge Cheryl L. Pollak for pretrial supervision.

**SO ORDERED.**

　　　　　　　　　　　　　　　　　　　_/s/ Natasha C. Merle_
　　　　　　　　　　　　　　　　　　　NATASHA C. MERLE
　　　　　　　　　　　　　　　　　　　United States District Judge

Dated:　　　April 28, 2025
　　　　　　Brooklyn, New York