UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
CONSTANCE BELL,

                      Plaintiff,

       -against-                          **ORDER**
                                              24 CV 1877 (NCM) (CLP)
ARCHCARE COMMUNITY SERVICES, INC, *et al.*,

                      Defendants.
-----------------------------------------------------------X
**POLLAK**, United States Magistrate Judge:

        On March 13, 2024, plaintiff Constance Bell ("Bell"), individually and on behalf of all others similarly situated, commenced this action against defendants ArchCare Community Services, Inc., and Carmel Richmond Nursing Home, Inc. ("Carmel"), alleging violations of the Fair Labor Standards Act, 29 U.S.C. § 216(b) ("FLSA") and New York Labor Law §§ 190 *et seq.*, 650 *et seq.*, and 12 N.Y.C.R.R. §§ 142-2.1 and 142-2.2 ("NYLL"), based on defendants' failure to pay minimum wages, straight time wages, and overtime. (Compl.[1]). On May 28, 2024, plaintiff filed her First Amended Complaint. (FAC[2]).

        Currently pending before this Court is plaintiff's motion to file a Second Amended Complaint ("SAC[3]"), renaming ArchCare Community Services, Inc. as "Catholic Health Care System d/b/a Archcare" ("ArchCare"), and adding two new defendants: The Mary Manning

---

[1] Citations to "Compl." refer to plaintiff's Complaint, filed on March 13, 2024 (ECF No. 1).

[2] Citations to "FAC" refer to the plaintiff's First Amended Complaint, filed on May 28, 2024 (ECF No. 13).

[3] Citations to "SAC" refer to plaintiff's proposed Second Amended Complaint, filed on May 15, 2025 (redlined copy at ECF No. 39-3).

1

Walsh Nursing Home Company, Inc. ("Mary Manning Walsh"); and Providence Health Services, Inc. ("Providence"). In addition, plaintiff seeks to add and remove a number of factual allegations, largely focused on providing more specific information relating to the interrelationship and operations of the defendants and the various nursing facilities they allegedly operate. For the reasons set forth below, the Court grants plaintiff's Motion to amend.

## FACTUAL BACKGROUND

Plaintiff Bell alleges that she was employed as a Nurse Aide Trainee by defendants at the Carmel facility from approximately December 13, 2021, through May 2022, earning $15.00 per hour as an Hourly Employee. (FAC ¶¶ 9-10, 28). Plaintiff alleges that throughout her employment, she was scheduled to work from 6:00 a.m. to 2:00 p.m., which included an automatic 30-minute deduction per day for a meal break. (Id. ¶ 11). Plaintiff alleges that "on numerous occasions" during her employment, she was scheduled to work at least 40 hours per week, inclusive of her automatically deducted meal break. (Id.) As an example, plaintiff cites the pay period March 6, 2022, through March 19, 2022, when she worked at least 37.5 hours each week, excluding the 30-minute meal break, which, if included, meant she worked at least 40 hours each week. (Id. ¶ 12). Plaintiff further alleges that she routinely worked during her uncompensated meal breaks, as well as before and after her scheduled shifts, and was not properly compensated for all hours worked, including overtime at the applicable rate. (Id. ¶¶ 13, 15, 16). She alleges that she routinely performed 5 to 10 minutes of "essential work" before the start of her scheduled shift, and 5 to 15 minutes after the end of her scheduled shift, resulting in at least 10 to 30 minutes of uncompensated work. (Id. ¶¶ 15-17). Again, she provides as an example the time worked during the pay period March 6, 2022, through March 19, 2022, when she alleges that she worked at least 1 hour and 17 minutes for which she was not paid. (Id. ¶ 19).

2

Plaintiff alleges that defendants employ over 1,000 Hourly Employees at their various health care facilities. (Id. ¶ 31). According to plaintiff, when defendants hired plaintiff and the other Hourly Employees, defendants promised to pay hourly wages for all hours worked. (Id. ¶ 32). Plaintiff alleges that defendants have engaged in illegal and improper wage practices and policies, including improperly penalizing Hourly Employees by configuring the time clocks in defendants' facilities to round down and artificially reduce the amount of time Hourly Employees are credited with performing, and automatically deducting time for meal breaks when Hourly Employees are performing work during that time, depriving Hourly Employees of their wages and overtime pay. (Id. ¶ 3).

Plaintiff further alleges that she was not paid the proper overtime rate for hours worked in excess of 40 in a week, and in fact, never received any overtime pay during her employment despite routinely working in excess of 40 hours a week. (Id. ¶ 20). She alleges that other Hourly Employees were also required to track the hours worked for defendants through time clocks identical to the one used by plaintiff or through hard copy sign-in sheets, and were not properly paid for all the hours worked. (Id. ¶ 21). Plaintiff asserts that her supervisor was aware that she was performing work during pre- and post-shift time, and during her meal breaks, "but did nothing to rectify the situation or compensate Bell for her time." (Id. ¶ 25).

## PROCEDURAL HISTORY

Plaintiff's initial Complaint brought claims against ArchCare Community Services and Carmel Richmond, alleging that they violated federal and state wage and hour laws by configuring the time clocks in their facilities to round down and reduce the amount of time that employees are credited for work, and by automatically deducting time for meal breaks even when their employees are working during that period. (Compl.). In her First Amended

3

Complaint, filed on May 28, 2024, plaintiff added specific examples of days in which plaintiff was underpaid as a result of these practices. (FAC ¶¶ 18, 19).

In response to plaintiff's First Amended Complaint, defendants sought dismissal on the grounds that plaintiff had failed to state a claim for unpaid overtime under the FLSA and NYLL because her complaint never alleged that she was scheduled to work for forty hours a week, and for failing to state a claim for unpaid minimum wages under the FLSA. (ECF No. 25). In a Memorandum and Order filed April 28, 2025, the district court denied defendants' motion to dismiss plaintiff's overtime claims, but found that plaintiff had failed to allege facts indicating that her average hourly wage was less than the federal minimum wage, and thus she had failed to allege a plausible claim for minimum wage violations under the FLSA. (ECF No. 37 at 12, 18). The court further found that since plaintiff had alleged a claim under the FLSA, the court could exercise supplemental jurisdiction over the NYLL claims and thus denied defendants' motion to dismiss those claims. (Id. at 19).

While the motion was pending, four individuals opted into the case as plaintiffs; three of them had worked for ArchCare at the Carmel Richmond facility, while opt-in plaintiff Conrad Olonimoyo had worked at Mary Manning Walsh, a different facility. (Pl.'s Mem.[4] at 5). Although the district court had limited discovery to the named plaintiff while the motion to dismiss was under consideration, defendants agreed to produce discovery with respect to all of the opt-ins, with the exception of plaintiff Olonimoyo, arguing that the originally named defendants were not his employer. (Id. at 4, 5). Although defendants had not moved to dismiss on the grounds that ArchCare Community Services, Inc. was not plaintiff's employer and was

---

[4] Citations to "Pl.'s Mem." refers to Plaintiff's Memorandum of Law in Support of Motion for Leave to Amend, filed May 15, 2025 (ECF No. 39-4).

4

not a proper defendant in the case, plaintiff claims that defendants continued to take the position that ArchCare was not plaintiff's proper employer. (Id. at 5, 6).

Thus, in moving to amend, plaintiff now seeks to add Mary Manning Walsh as a defendant, to add as additional defendants Catholic Health Care Systems d/b/a ArchCare, and Providence Health Services, the corporate parents of Carmel Richmond and Mary Manning Walsh, and to remove ArchCare Community Services, Inc. as a defendant. (Id. at 3). In addition, plaintiff's proposed Second Amended Complaint adds factual allegations relating to the joint employer status of the defendants and the proposed class, as well as allegations relating to opt-in plaintiff Olonimoyo. (Id.; SAC ¶ 32).

Specifically, plaintiff alleges that defendant ArchCare is a not-for-profit corporation that operates nursing homes across New York, and that identifies as the "[d]irect controlling entity" to ArchCare Community Services, Inc., and Mary Manning Walsh, and that defendant Providence is the parent company, sponsor, and sole corporate member, of ArchCare. (SAC ¶¶ 27-29). It is alleged that Providence has the authority to appoint and remove members of ArchCare's Board of Trustees, as well as the sole authority to amend the certificate of incorporation and by-laws of ArchCare, change its mission, deal with its assets, and approve any mergers or dissolution of ArchCare. (Id. ¶ 29). The proposed Second Amended Complaint also seeks to add various allegations relating to the interrelationships of the various defendants, including a common management agreement, overlapping and shared board members, and common operational control over the employees in the various facilities. (Id. ¶¶ 44-57).

In addition, the proposed Second Amended Complaint contains specific allegations relating to opt-in plaintiff Olinimoyo, who was employed by defendants at the Mary Manning Walsh facility as a Certified Nursing Assistant. (Id. ¶ 32). According to the Complaint,

5

Olinimoyo regularly worked in excess of 40 hours per week. (Id.) Two to three times per week, Olinimoyo would arrive approximately 5 to 10 minutes prior to the start of his shift, and approximately two to three times per month, he would work approximately 15 to 30 minutes beyond the end of his scheduled shift. (Id.) Also, two to three times a month, he would work during his meal break, for which he was not compensated. (Id.)

Plaintiff contends that the proposed amendments to the Complaint would not be futile because the causes of action are nearly identical to the ones that the court already sustained as viable. Further, plaintiff argues that defendants would not be prejudiced by the proposed amendments since the amendments respond to defendants' contention that ArchCare is not a proper employer of plaintiff and clarify the interrelatedness of the defendants and the employees. (Pl.'s Mem. at 7, 9). In addition, by specifically adding the Mary Manning Walsh facility, plaintiff clarifies the standing of Mr. Olinimoyo, and other employees who worked at that facility, to participate in this action. (Id. at 8). Plaintiff further contends that the litigation is in its infancy; the only discovery that has occurred has been limited document discovery; class-wide discovery has not begun, and accordingly, there will be no significant delay and defendants will not be required to expend additional resources. (Id.)

## DISCUSSION

    A.    <u>Standards for Motion to Amend</u>

Pursuant to Federal Rule of Civil Procedure 15(a)(1), a party may amend "its complaint once as a matter of course within 21 days after serving the [original] complaint or within 21 days after a responsive pleading has been served." <u>Santagata v. Diaz</u>, No. 17 CV 3053, 2019 WL 2164082, at *2 (E.D.N.Y. May 17, 2019); <u>Blanchard v. Doe</u>, No. 17 CV 6893, 2019 WL 2211079, at *3 (E.D.N.Y. May 22, 2019). After that, amendments are allowed "only with the

6

opposing party's written consent or the court's leave."  Fed. R. Civ. P. 15(a)(2).

Rule 15 expresses a strong presumption in favor of allowing amendment, stating that "[t]he court should freely give leave when justice so requires."  Fed. R. Civ. P. 15(a)(2); see also Zucker v. Porteck Global Servs. Inc., No. 13 CV 2674, 2015 WL 6442414, at *4 (E.D.N.Y. Oct. 23, 2015) (noting that amendments are generally favored because they "tend to facilitate a determination on the merits").  While courts have broad discretion in deciding whether to grant motions to amend, the Second Circuit has cautioned that an amendment should only be denied "'for good reason, including futility, bad faith, undue delay, or undue prejudice to the opposing party.'"  Bensch v. Estate of Umar, 2 F.4th 70, 81 (2d Cir. 2021) (quoting McCarthy v. Dun & Bradstreet Corp., 482 F.3d 184, 200 (2d Cir. 2007)).

Courts may deny motions to amend where the proposed amendment would be futile as a matter of law.  Such futility is established where the amendment "'would fail to cure prior deficiencies or to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure.'"  Thea v. Kleinhandler, 807 F.3d 492, 496-97 (2d Cir. 2015) (quoting IBEW Loc. Union No. 58 Pension Trust Fund & Annuity Fund v. Royal Bank of Scotland Grp., PLC, 783 F.3d 383, 389 (2d Cir. 2015)); see also Perfect Pearl Co., Inc. v. Majestic Pearl & Stone, Inc., 889 F. Supp. 2d 453, 459 (S.D.N.Y. 2012) (holding that "[a] proposal to amend a complaint is futile if the proposed amended complaint would fail to state a claim upon which relief could be granted").  "[T]he standard for denying leave to amend based on futility is the same as the standard for granting a motion to dismiss."  IBEW Loc. Union No. 58 Pension Trust Fund & Annuity Fund v. Royal Bank of Scotland Grp., PLC, 783 F.3d at 389.  Accordingly, the Court must "consider 'the proposed amendment[s] . . . along with the remainder of the complaint,' accept as true all non-conclusory factual allegations therein, and draw all reasonable inferences in plaintiff's favor to

7

determine whether the allegations plausibly give rise to an entitlement of relief." Panther Partners, Inc. v. Ikanos Commc'ns, Inc., 681 F.3d 114, 119 (2d Cir. 2012) (quoting Starr v. Sony BMG Music Ent., 592 F.3d 314, 323 n.3 (2d Cir. 2010), and citing Ashcroft v. Iqbal, 556 U.S. 662, 678-80 (2009)); see also Debrosse v. City of New York, No. 13 CV 3822, 2016 WL 3647589, at *2 (E.D.N.Y. May 25, 2016), report and recommendation adopted, 2016 WL 3647590 (E.D.N.Y. June 30, 2016).

When deciding a Rule 12(b)(6) motion to dismiss, courts consider whether the complaint "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. at 678 (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 554, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Bell Atl. Corp. v. Twombly, 550 U.S. at 556); see also Hayden v. Paterson, 594 F.3d 150, 160-61 (2d Cir. 2010) (stating that the same standard guides the court's analysis of a Rule 12(c) motion).

Under this pleading standard, "labels," "conclusions," or "a formulaic recitation of the elements of a cause of action will not do." Ashcroft v. Iqbal, 556 U.S. at 678 (quoting Bell Atl. Corp. v. Twombly, 550 U.S. at 555) (internal quotation marks omitted). Instead, a plaintiff must provide enough factual support that, if true, would "raise a right to relief above the speculative level." Bell Atl. Corp. v. Twombly, 550 U.S. at 555. However, the "plausibility standard" does not rise to the level of a "probability requirement[;]" instead, the standard requires "more than a sheer possibility that a defendant has acted unlawfully." Hayden v. Paterson, 594 F.3d at 161 (quoting Ashcroft v. Iqbal, 556 U.S. at 678) (internal quotation marks omitted).

Thus, in deciding a motion to amend that is challenged on grounds of futility, the Court

considers whether the newly added claims contain sufficient factual allegations to state a plausible claim for relief. "The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." Walker v. Schult, 717 F.3d 119, 124 (2d Cir. 2013) (quoting Scheuer v. Rhodes, 416 U.S. 232, 236 (1974), abrogated on other grounds by, Harlow v. Fitzgerald, 457 U.S. 800 (1982)). Ultimately, when the well-pleaded facts do not permit a court to "infer more than the mere possibility of misconduct," a plaintiff has only alleged, rather than shown, an entitlement to relief, and the federal pleading standard has not been satisfied. Ashcroft v. Iqbal, 556 U.S. at 679 (citing Fed. R. Civ. P. 8(a)(2)).

    B.    Defendants' Objections

Defendants oppose the filing of the proposed Second Amended Complaint, arguing that the amendments are futile because plaintiff "lacks both standing to sue and is plainly an inadequate representative of a class of employees who worked for different employers, under different policies and different collective bargaining agreements." (Defs.' Opp.[5] at 4-5). Defendants contend that plaintiff was never employed by the other subsidiaries she now attempts to name – Mary Manning Walsh, Ferncliff Nursing Home Company, Terence Cardinal Cooke Health Care Center, ArchCare, Providence, or St. Vincent de Paul Residence. (Id. at 5). Defendants contend that plaintiff is "attempt[ing] to enlarge the putative class" despite the fact that she has no standing to bring claims on behalf of individuals with whom she had "no employment relationship or meaningful interaction." (Id.)

Defendants further argue that plaintiff has failed to establish that Carmel Richmond

---

[5] Citations to "Defs.' Opp." refer to defendants' Memorandum of Law in Opposition to Plaintiff's Motion to Amend the Complaint, filed June 6, 2025 (ECF No. 42).

9

operated under a uniform policy or pay structure shared by the alleged affiliated subsidiaries. (Id. at 6).  They contend that she only cites "conclusory anecdotes of illegal conduct" that are not sufficient to show the commonality and typicality necessary to represent the proposed class.  (Id. at 6-7).  Defendants note that the proposed class is composed of employees represented by multiple different labor unions, with different collective bargaining agreements, which "undermine the cohesion necessary for class treatment and preclude Plaintiff from serving as an adequate class representative."  (Id. at 8).

Defendants further argue that the amendments must be denied under Federal Rule 15(c), due to plaintiff's failure to name Mary Manning Walsh, Catholic Health Care System, and Providence within 120 days of the original complaint.  (Id. at 9).  Defendants also contend that they produced discovery on November 13, 2024, outlining the corporate structure of Providence, which disclosed the separate and distinct corporate identities of the proposed new defendants. (Id. at 10).  In addition, defendants argue that there was publicly available information that would have confirmed the relationship of the defendants if plaintiff's counsel had conducted a diligent investigation.  (Id.)  Thus, defendants argue that plaintiff has failed to show good cause, pursuant to Fed. R. Civ. P. 16(b), that would justifu the amendments at this late date.  (Id. at 10-11).

Defendants further argue that adding these "multiple distinct entities" is highly prejudicial to defendants, requiring "a massive expansion of discovery into entities and facilities that have no connection to Plaintiff's employment at Carmel Richmond, but [ ] would also delay proceedings and impose significant costs on all parties."  (Id. at 12, 13).

10

C. <u>Analysis</u>

1) <u>Futility</u>

Turning first to defendants' argument that the proposed Second Amended Complaint is futile because plaintiff lacks standing to bring claims on behalf of the proposed class and would be an inadequate class representative, this Court previously explained in <u>Moukengeschaie v. Eltman, Eltman & Cooper, P.C.</u>, that different standards apply when considering whether a proposed pleading amendment is sufficient under Rule 15(a) and whether the requirements necessary to certify a class under Rule 23 have been met. 277 F. Supp. 3d 337, 347 (E.D.N.Y. 2017). As noted <u>supra</u>, in considering whether to allow an amendment to a pleading, the Court accepts as true the facts alleged by the moving party and determines whether there are sufficient facts alleged to state a plausible claim on its face. <u>Id.</u> (citing <u>Ashcroft v. Iqbal</u>, 556 U.S. at 678). By contrast, the court is required to perform a "rigorous analysis," <u>Massey v. On-Site Manager, Inc.</u>, 285 F.R.D. 239, 244 (E.D.N.Y. 2012), in determining whether a party seeking certification under Rule 23 has carried its burden of establishing by a preponderance of the evidence that each of Rule 23's requirements have been met. <u>See</u> <u>Butto v. Collecto, Inc.</u>, 290 F.R.D. 372, 380 (E.D.N.Y. 2013) (quoting <u>Myers v. Hertz Corp.</u>, 624 F.3d 537, 547 (2d Cir. 2010)). Only if the proposed amended pleadings, viewed in the light most favorable to the plaintiff, demonstrate that a "proposed class cannot be certified," should leave to amend be denied as futile. <u>Duling v. Gristede's Operating Corp.</u>, 265 F.R.D. 91, 105 (S.D.N.Y. 2010) (considering a proposed amendment in the context of evaluating a motion for class certification).

In this case, plaintiff has not yet moved for class certification and is simply required at this stage to provide sufficient factual allegations that, accepted as true, state a plausible claim for relief. Thus, defendants' argument that plaintiff's "conclusory anecdotes of illegal conduct" are not sufficient to satisfy the requirements of commonality and typicality is premature, and

11

more appropriately raised in opposition to any subsequent motion for class certification. (Defs.' Opp. at 6).

As for whether plaintiff has alleged a plausible claim against defendants in this case, the proposed Second Amended Complaint alleges sufficient facts, assumed to be true, that the various named defendants and corporate entities operate as joint employers or as a single integrated enterprise. Plaintiff, in alleging that ArchCare and Providence are under common ownership and exercise control over Carmel Richmond, Mary Manning Walsh, and other facilities, cites to ArchCare's website referring to the facilities as part of ArchCare, and to IRS tax filings indicating that ArchCare is the "direct controlling entity" of the various facilities and that Providence is the sole member of ArchCare. (SAC ¶¶ 27-34, 45-58). Plaintiff further alleges that ArchCare and Providence control the operations of the facilities, and subjected the other employees at the facilities to substantially similar wage policies and practices as plaintiff. (Id. ¶ 37, 57). Plaintiff relies in part on the Employee Handbook issued by ArchCare, the job description and application that she was given by ArchCare, and the offer letter she received, issued on ArchCare's letterhead, with references to the ArchCare website. (Id. ¶ 52) She has also included allegations that Mr. Olinimoyo, who was employed at the Mary Manning Walsh facility, was subjected to the same unlawful wage practices as plaintiff. (Id. ¶ 32).

As the court in Johnson v. Bryson, noted, "when a defendant's opposition to a motion to amend involves not-yet-certified classes, it is appropriate to allow the amendment and address the defendant's arguments against certification 'in the context of motions to certify the proposed classes.'" 851 F. Supp. 2d 688, 712-13 (S.D.N.Y. 2012); see also Presser v. Key Food Stores Co-op, Inc., 218 F.R.D. 53, 57 (E.D.N.Y. 2003).

Defendants also argue that the employees in plaintiff's proposed class are represented by

12

multiple different labor unions, with different collective bargaining agreements. (Defs.' Opp. at 8). While defendants may be correct that ultimately these different agreements will be found to "undermine the cohesion necessary for class treatment" (id.), this argument is also premature. Indeed, as set forth supra, the Court analyzes a motion to amend under the same standards used to determine whether a motion to dismiss under Rule 12(b)(6) should be granted. To the extent that defendants rely on the terms of the various collective bargaining agreements to argue that the employees are not similarly situated, it is well established that motions to amend are "adjudicated without resort to any outside evidence," Xia v. New Yung Wah Carrier LLC, 2022 WL 1205142, at *1 (collecting cases) (citation and internal quotation marks omitted), and courts generally decline to consider declarations or other extrinsic evidence when determining whether to allow an amendment. Ferrara v. Smithtown Trucking Co., Inc., 29 F. Supp. 3d 274, 282 (E.D.N.Y. 2014); Shpak v. Curtis, No. 10 CV 1818, 2012 WL 511478, at *9 (E.D.N.Y. Feb. 14, 2012).

In relying on evidence extrinsic to the pleading, defendants mistake the standard for evaluating futility on a motion to amend. As explained above, plaintiff has sufficiently pled wage violation claims on behalf of herself and another employee within the four corners of the proposed Second Amended Complaint, overcoming defendants' argument that leave to amend would be futile for failure to state a claim. Moreover, based upon the allegations in the proposed Second Amended Complaint, plaintiff has a good faith basis to believe her claims as to the interrelatedness of the defendants, based on a review of relevant public and other records produced during discovery. (See Pls.' Reply Mem.[6] at 6-7). This basis is sufficient for plaintiff

---

[6] Citations to "Pl.'s Reply Mem." refer to Plaintiff's Reply Memorandum of Law in Further Support of Motion for Leave to Amend, filed June 20, 2025 (ECF No. 45).

13

to bring these claims.

Thus, defendants' argument that the amendments should be denied as futile in light of different union contracts is without merit.

   2) Rule 15(c)

Defendants cite Fed. R. Civ. P. 15(c) to argue that plaintiff should not be permitted to name additional parties or to amend the name of a party unless that party received notice of the original complaint, and knew or should have known of the mistaken identity of the proper party, and the motion to amend is made within 120 days. (Defs.' Opp. at 8-9). Defendants argue that the failure to name a party due to lack of knowledge as to their identity is not a mistake, and that relation back is precluded if the plaintiff failed to originally name them due to lack of knowledge. (Id.)

Rule 15(c) of the Federal Rules of Civil Procedure, also known as the "relation back" rule, determines whether an amended pleading can relate back, or be considered filed as of the date of the initial pleading, even if the statute of limitations has expired. Defendants rely on the Second Circuit's decision in Barrow v. Wethersfield Police Dep't, 66 F.3d 466 (2d Cir. 1995), modified, 74 F.3d 1366 (2d Cir. 1996), where a *pro se* plaintiff alleged Section 1983 claims against a police department but failed to name the individual police officers prior to the running of the three-year statute of limitations applicable to such claims. In holding that the new claims did not relate back to the date of the original complaint, the court analyzed the three requirements of Rule 15(c) and determined that even though plaintiff did not know the names of the arresting officers at the time the complaint was filed, the amendments were not to correct a mistake but to correct a lack of knowledge, and thus, the requirements of Rule 15(c) had not been met and the claims against the officers filed after the expiration of the statute of limitations

14

were untimely.  Barrow v. Wethersfield Police Dep't, 66 F.3d at 470.

In this case, the statute of limitations had not expired at the time plaintiff sought to amend the complaint to add new defendants and correct the name of ArchCare.  Plaintiff commenced this action on March 13, 2024, alleging claims under the three-year statute of limitations for willful violations of the FLSA, and claims under the six-year statute of limitations for the NYLL.  Given that the claims arose in May of 2022, plaintiff's motion for leave to amend is within the statutory period and thus, Rule 15(c) does not apply.  Even if the motion to amend was filed several days after the date of expiration, it was filed well within the 120 days set by the Rule and, as plaintiff notes, the newly added defendants, which are the parent corporations of Cardinal and Mary Manning Walsh, were aware of the claims since the beginning of the lawsuit, or at least from the date of Mr. Olonimoyo's opt-in filing.  (Pl.'s Reply Mem. at 9, n.6).

Accordingly, the Court finds that the proposed amendments were timely filed and relate back to the date of the initial Complaint.

3) Rule 16(b)

Defendants also argue that the motion should be denied because plaintiff has not demonstrated good cause for amending the complaint as required by Rule 16(b).  (Defs.' Opp. at 9-10).  Rule 16 governs the management and scheduling of pretrial discovery, including scheduling of deadlines for amendments of pleadings.  Fed. R. Civ. P 16(b).  To the extent that defendants rely on this Rule to argue that plaintiff must show good cause before an amendment to the pleadings should be granted, their reliance is misplaced.  Here, there was no specific deadline set by the Court for amending the pleadings; thus, the pleadings were timely and not in violation of Rule 16.  Even if there had been a deadline, plaintiff has demonstrated good cause for the proposed amendments.  Thus, the Court finds that Rule 16 does not preclude plaintiff's amendments.

    4) <u>Prejudice</u>

Finally, to the extent that defendants argue prejudice based on the addition of these "multiple distinct entities," arguing that now there will be "a massive expansion of discovery into entities and facilities that have no connection to Plaintiff's employment," which will "impose significant costs on all parties" (<u>id.</u> at 13), the Court notes that plaintiff has made it clear from the initial Complaint that she seeks to represent a class of similarly situated employees, a fact that defendants were aware of and acknowledged in a letter to the Court, dated September 6, 2024. (ECF No. 20). Moreover, as addressed <u>supra</u>, discovery is ongoing; no motion for class or collective certification has yet been filed and no trial date has been set. Accordingly, the Court concludes that any delay or increase in discovery as a result of the amended pleadings will not result in undue prejudice to the defendants sufficient to warrant denial of the Motion to amend.

CONCLUSION

For the reasons set forth above, the Court grants plaintiff's Motion to amend and authorizes the filing of the proposed Second Amended Complaint. Plaintiff shall serve the proposed Second Amended Complaint on defendants by **December 4, 2025** and shall file proof of service on the docket immediately thereafter.

The Clerk is directed to send copies of this Order to the parties either electronically through the Electronic Case Filing (ECF) system or by mail.

    **SO ORDERED.**

Dated: Brooklyn, New York
       November 20, 2025

                                     /s/ Cheryl L. Pollak
                                     Cheryl L. Pollak
                                     United States Magistrate Judge
                                     Eastern District of New York